EVERITE TRADING CORPORATION, Plaintiff, *v.* WANPRESS REALTY CORPORATION and Others, Defendants.

Supreme Court, Special Term, New York County, May 21, 1942.

*Samuel A. Hirshowitz,* for the plaintiff.

*David Natelson,* for the defendants Wanpress Realty Corporation and Muriel Rose.

EDER, J. This is an application made by the plaintiff judgment creditor for an allowance of an attorney's fee to be assessed against the defendant Wanpress Realty Corporation, as transferor, and the defendant Muriel Rose, as transferee, pursuant to section 276-a of the Debtor and Creditor Law, after recovering a judgment in this action which was brought to set aside an alleged fraudulent conveyance by the said corporation to the said defendant. The complaint was dismissed as to all the other defendants. The controversy related to the alleged transfer and assignment of a rooming house business of the corporation and of the rents, issues, profits and property of the corporation to the defendant Muriel Rose. The statute in question is entitled " Attorneys' fees in action to. set aside conveyance with intent to defraud," and reads as follows: " In an action brought by a judgment creditor to set aside a conveyance by a judgment debtor, where such conveyance is found to have been made by the judgment debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud the judgment creditor, in which action the judgment creditor shall recover judgment, the justice presiding at the trial shall fix the reasonable attorney's fees of the judgment creditor in such action, and the judgment creditor shall have judgment therefor against the judgment debtor and the transferee who are defendants in addition to the other relief granted by the judgment. The fee so fixed shall be without prejudice to any agreement, express or implied, between the judgment creditor and his attorney with respect to the compensation of such attorney."

It is contended by the plaintiff that the allowance sought is mandatory upon the court; seemingly, the basis upon which this application rests is that such a fee must be granted as long as the judgment creditor has succeeded in the action. I am unable to concur in this view; I am of the opinion that much more must

be shown before the plaintiff and judgment creditor can successfully invoke this provision.

Fraudulent transfer or conveyance, for the purpose of cheating creditors, is an old device; to destroy its efficacy as much as possible article 10 of the Debtor and Creditor Law was enacted; it is entitled, " Fraudulent Conveyances." Section 276 declares invalid every conveyance made with an actual intent to defraud creditors; by sections 278 and 279 creditors whose claims have matured or have not matured may have a fraudulent conveyance set aside. But though these remedies were given to the creditor they proved inadequate to discourage indulgence in fraudulent and dishonest practices of this kind.

It was known as a matter of common experience and indeed as a matter of common knowledge that suits of this nature necessarily involved the defrauded creditor in expense in engaging the services of a lawyer and for accompanying disbursements; that they were elements which tended to dishearten a judgment creditor from instituting and prosecuting such an action, particularly in the absence of any remedy to obtain reimbursement for the outlay. Thus the purpose and object of the legislation were defeated and set at naught and the denounced practice continued. It was also realized that while a person might readily be found to act as an accommodation transferee where it involved him in no personal liability, he would hesitate or decline to lend himself to such a scheme where he might be saddled with the expense of an attorney's fee for the services rendered by the attorney engaged by the judgment creditor, and the likelihood and probability that the court would impose an appropriate assessment as a penalty and lesson. It was believed that an enactment along this line and with such a purpose might serve as a deterrent; and an examination of the background of this legislation indicates that such was the thought which prompted its sponsors and which motivated its supporters. (See New York State Bar Assn. Legis. Circular No. 37, p. 86, Feb. 23, 1938; Assn. of the Bar of the City of New York Bulletins of Committee on State Legislation, 1938, p. 419.)

Since this type of litigation is predicated upon an actual intent to defraud it was felt that innocent parties should be relieved of all consequences of the fraud and that logic dictated that the penalty of the assessment should be visited only on the actual wrongdoer. Accordingly the language of the enactment was so phrased as to make it applicable only to a case where the conveyance was found to have been made by the judgment debtor and received by the transferee with such actual intent, as distinguished from an intent presumed in law. In consequence, where a con-

veyance or transfer is made without such an actual intent to defraud, or is received without such an actual intent, the provision is inoperative; for example, where it is made merely with intent to prefer, or where the transferee's conduct does not involve such an actual intent though an actual intent to defraud may have moved the transferor. Many instances may be visioned where a transferee may be imposed upon and act innocently in accepting a conveyance or transfer without the slightest knowledge of the transferor's true motive; this is often so in cases where the transferor leaves the country for some time and in family matters, and in which cases the transferee acts in an accommodating capacity free of all evil intent. Hence the feature of actual intent being necessary to be proved and found before the statute becomes operative; plainly, the basic element is actual intent to defraud.

In the instant case no such actual intent to defraud was proved or found. There was no conveyance or transfer here *by the debtor to the transferee;* what the transferee acquired came, not from the judgment debtor, but from the landlord, as transferor; the debtor made no voluntary conveyance to the defendant Muriel Rose; made no conveyance at all; indeed had nothing to convey; the fact is that the landlord of this rooming house divested the judgment debtor of this, apparently its only asset, through the institution of summary proceedings, in which a final order and judgment were obtained and as a result of which the landlord gained possession of the furnishings and of the premises as well; thereafter the landlord let the furniture and the premises to the defendant Muriel Rose, who, this court found, was acting in that transaction and had acted as the *alter ego* of the judgment debtor; in consequence she was held to occupy the status of a trustee and ordered to account.

This statute contemplates and intends a voluntary transfer by the judgment debtor to the transferee for the purpose of perpetrating a fraud on the judgment creditor, with conscious acting by both parties to the scheme; such a conveyance is made for the purpose of hindering, delaying or defrauding the judgment creditor; but a conveyance or transfer made under the circumstances here narrated cannot possibly be characterized as coming within that category, for the landlord had the legal right to divest the judgment debtor of that property and as well had the legal right to dispose of it after its acquisition by him to whomsoever he pleased. And since that transaction involved no conveyance or transfer by the *judgment debtor* or any actual intent to defraud the judgment creditor, nor could it, since such divestment was not the debtor's act but that of another over whom it had no control, the statute has no application.

But aside from this feature there was no finding by the court that an actual intent to defraud the judgment creditor was involved in the transaction consummated between the landlord and the defendant Muriel Rose, nor could there have been such a finding. In rendering judgment for the plaintiff the court indulged the premise that the defendant Muriel Rose acted merely for the benefit of the debtor and was, therefore, accountable on the theory of a constructive fraud against the judgment creditor involving an intent presumed in law, not an actual intent, and by the very language of the statute it is inapplicable to such a case.

I am unable to perceive any theory of reasoning upon which the application can prevail and it is accordingly denied.